[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 639 
Eckford Lee Flanagan was indicted for first degree rape and sodomy pursuant to §§ 13A-6-61 and 13A-6-63, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." He was sentenced to 30 years' imprisonment on each count, with the sentences to run concurrently.
The victim in this case, the appellant's daughter, was 16 years old at the time of the incident. She testified that on January 3, 1986, she was living with her father (the appellant), mother and three younger siblings in Hartselle, Alabama.
Her father arrived home from work at approximately 6:30 that afternoon. The victim's mother was working late that night.
The victim began preparing dinner that afternoon at approximately 3:00 p.m. Soon after her father arrived, he began drinking a mixture of wine and whiskey.
After the family ate dinner, the victim and her father went into the living room to watch television. The other children went outside to play. The victim began drinking the wine mixture at her father's direction.
At some point her father told the victim to come over to him. She had been sitting several feet away. When she went over to him he told her that she "smelled good" and began fondling her breasts. While this was occurring, the victim's younger sister, M., came in the door with a friend named Pam. When M. saw what was happening, she closed the door so that her friend would not see them. M. asked if she could spend the night with her friend and the appellant told her that she could.
The victim then got up to help M. get her clothes together to spend the night with her friend.
After M. left, the appellant again told the victim to come over to him and continued fondling her. The appellant then got up and led the victim into his bedroom. He began to undress her and then told her to go into her room and change into her night clothes.
The victim stated that she did not lock the door to her room while she was there because he would have forced his way in. When she returned to the appellant's bedroom, the appellant forced her to have sexual intercourse with him.
At some point her little brother knocked on the front door of the apartment and the victim let him and a friend of his into the house. The appellant told the victim's brother and his friend to go into the brother's room and stay there. *Page 640 
When the victim returned to the appellant's bedroom, the appellant told her they should go into the victim's room. When they got in the victim's room, the appellant ordered the victim to perform oral sex on him. She told him "no". The appellant replied that the victim was his daughter and he could do whatever he wanted with her. The victim then testified that she performed oral sex on the appellant because she was scared and did not know what he might do if she disobeyed.
The victim testified that, when the appellant drank, he exhibited violent behavior. The appellant told the victim to get into the bathtub and "straighten up" because he was going to pick up the victim's mother at work.
After the appellant left the apartment, the victim's younger sister came into the bathroom and found the victim crying. A neighbor came in a few minutes later while the victim was still in the bathtub.
The police were called and Sgt. Larry Ricks of the Hartselle Police Department arrived at the victim's home at approximately 8:19 p.m. Sgt. Ricks found the victim sitting on the bathroom floor crying when he arrived.
Officer Greg Bartlett, an investigator with the Hartselle Police Department, testified that he arrived at the scene at approximately 8:29 p.m. The victim was sitting on the couch in her home. He described the victim as being highly intoxicated and hysterical.
The victim's sister, M., testified that she had seen the appellant fondling the victim in the living room on the night in question.
Dr. James Dollar, the physician who examined the victim, testified that he found no evidence of semen present. A pelvic examination revealed no abnormalities in the genital area except for a small bruise in the anal area. His final diagnosis was "alleged rape". However, he stated on cross-examination that he found no objective evidence "to support a final diagnosis to any degree of medical certainty." (R. 162).
The appellant testified that he had never touched the victim and contended that the victim made the story up because she did not like living in Hartselle. The victim had lived with her grandparents in Louisiana her entire life except for the two years immediately preceding this incident. While she was living in Hartselle, the victim had to take care of her siblings. After her father was arrested on these charges, the victim attempted to have the charges dropped against him. Her father (the appellant) had sent her the necessary forms.
During the cross-examination of the appellant, he admitted to having been arrested for public intoxication at his wife's place of employment on the night in question. The prosecutor was allowed to ask the appellant about a specific incident of prior sexual contact between himself and the victim. The appellant denied any such relationship had ever existed. On rebuttal, the victim was allowed to testify concerning this same prior incident. She testified that the appellant had forced her to have sexual intercourse with him during the summer of 1985, about nine months earlier.
 I
The appellant contends that the trial court erred in refusing his requested jury charges numbers six and seven. The charges were as follows:
 "6. The evidence presented by the State rests upon the credibility of one witness. If you do not believe that witness beyond a reasonable doubt, you cannot find the defendant guilty, but must return a verdict of not guilty.
Given
 s/s N.B.P. Judge ---------------- Refused
 "7. The evidence presented by the State depends on the testimony of the victim. If any of you do not believe her testimony beyond a reasonable doubt, then you cannot return a verdict of guilty.
Given
 N.B.P. Judge ------------ Refused"
(R. 397)
The appellant contends that this case is analogous toCook v. State, 437 So.2d 1378 *Page 641 
(Ala.Crim.App. 1983), wherein this court held that the refusal of a similar charge constituted reversible error. We disagree.
In Cook, the appellant's rape conviction was, in fact, based solely upon the victim's testimony. Furthermore, the defense in that case presented testimony of a neighbor that the victim's reputation in general, and for truth, was bad and that she would not believe the victim under oath. Cook, supra at 1378.
In the case at bar, the victim's testimony was corroborated by other witnesses. The victim's sister, M., testified to having seen the incident which preceded the commission of the offenses. Her testimony corroborated that of the victim. Other witnesses testified concerning the victim's immediate reporting of the incident and her emotional state immediately following the incident. See Benford v. State, 435 So.2d 1327
(Ala.Crim.App. 1981); Cf. Alexander v. State, 21 Ala. App. 497,109 So. 528 (1926); Dunn v. State, 19 Ala. App. 576, 99 So. 154 (1924) (the testimony of the witness was the "only evidence in any way connecting the defendant with the commission of the crime").
In addition, the only significant evidence offered to impeach the credibility of this teen-age victim was her testimony, elicited on cross-examination, that she disliked living with the appellant and wanted to move from Hartselle to Louisiana. Based on the foregoing, we find that the trial court did not abuse its discretion in refusing the requested charges.
Moreover, as herein noted, the State's evidence was not based solely upon the testimony of the victim. See Benford, supra.
 II
The appellant contends that the evidence presented by the State was insufficient to support his conviction. Specifically, he argues that the State failed to produce sufficient evidence of "forcible compulsion" as required by §§ 13A-6-61 and13A-6-63. We disagree.
The victim testified at trial that the appellant had threatened her with a whipping if she did not drink the wine mixture. The evidence showed that the appellant had been drinking on the night in question. The victim testified that the appellant often became violent when he drank. She testified that the appellant ordered her to engage in the before-mentioned activity and that she was afraid not to do so.
 "The degree of force necessary for a conviction need not be such as to place the victim under such reasonable apprehension of death or bodily harm as to overcome her will. It is sufficient that the female was under such duress that the act was accomplished against her consent. Brummitt v. State, Ala. Cr. App., 344 So.2d 1261 [1977]."
Long v. State, 370 So.2d 354 (Ala.Crim.App. 1979);Weatherford v. State, 369 So.2d 863 (Ala.Crim.App. 1979).
 " 'The force necessary to be used, to constitute the crime of rape, need not be actual, but may be constructive or implied. An acquiescence to the act obtained through duress or fear of personal violence, is constructive force, and the consummation of unlawful intercourse by the man thus obtained would be rape.' "
Weatherford, supra at 872 (quoting Shepherd v. State, 135 Ala. 9,12, 33 So. 266, 267 (1903)); See also Robinson v. State,444 So.2d 902 (Ala.Crim.App. 1984). We hold that the evidence was sufficient here, and the question of whether or not "forcible compulsion" existed was properly submitted for the jury's consideration. See Minnifield v. State, 406 So.2d 1055
(Ala.Crim.App. 1981); Anthony v. State, 473 So.2d 554
(Ala.Crim.App. 1984); Long, supra; Weatherford, supra; Robinson, supra;Harris v. State, 333 So.2d 871 (Ala.Crim.App. 1976). Parrishv. State, 494 So.2d 705 (Ala.Crim.App. 1985), further defines "forcible complusion."
 III
The appellant contends that the trial court committed reversible error in allowing the State to inquire, on cross-examination and in rebuttal, as to the prior sexual activity between the appellant and the victim. He also contends that he was denied *Page 642 
the right to cross-examine the victim as to the prior sexual contact because of the "rape shield" statute (§ 12-21-203, Code of Alabama 1975). We disagree with both of appellant's contentions.
 " 'The general rule is that evidence of other crimes not charged in the indictment is inadmissible if its only purpose is to show bad character, inclination or propensity of the accused to commit the type of crime for which he is being prosecuted. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947). On the other hand, if the defendant's collateral misconduct is relevant and tends to show his commission of the current offense other than by suggesting that he is more likely to be guilty because of his past misdeeds, then the evidence is admissible. C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977).
 "Many Alabama cases have adopted the following exceptions to the general rule, or tests for relevancy, to determine whether evidence of uncharged crimes is admissible:
 "(1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes.'
 "E.g., Bobo v. State, 56 Ala. App. 622, 626, 324 So.2d 336 (1975) (quoting Wharton's Criminal Evidence § 31).'
 "Brewer v. State, 440 So.2d 1155 (Ala.Crim.App.), cert. denied, 440 So.2d 1155 (Ala. 1983)."
Primm v. State, 473 So.2d 1149, 1156 (Ala.Crim.App. 1985).
This evidence was properly admitted as within the "common plan, design, scheme or system" exception to the general rule precluding its admission. See C. Gamble, McElroy's AlabamaEvidence, §§ 69.01(6), 70.01(22)(c) (3rd ed. 1977); Bighames v.State, 440 So.2d 1231 (Ala.Crim.App. 1983); Summers v. State,33 Ala. App. 358, 36 So.2d 571 (1947), rev'd on other grounds,251 Ala. 38, 36 So.2d 574 (1948). See also Mathews v. State,491 So.2d 1087 (Ala.Crim.App. 1986) (testimony that appellant had previously sexually abused several other females under age ten who were living with him held admissible under "plan, scheme, and intent" exception). Cf. Ex Parte Cofer,440 So.2d 1121 (Ala. 1983) (rape which occurred ten years prior to charged offense held inadmissible and not within "common scheme" exception).
The proof of the other incident in this case was that approximately nine months prior to the occurrence of the crime charged, the appellant forced the victim to have sexual intercourse with him. We do not consider the nine month time span as placing this prior incident within the class of those considered too remote. See Deason v. State, 363 So.2d 1001
(Ala. 1978).
The victim's testimony concerning this prior incident was probative on the issue of whether or not forcible compulsion existed. It was relevant to show whether the victim understood the appellant's actions and statements to her as a threat of harm and whether the appellant intended his acts and statements to have such an effect.
 Furthermore, it is well settled that "[i]n a rape charge, the State may prove, as tending to show a sexual passion in the accused for the alleged victim, acts by the accused prior to the alleged rape indicating a sexual passion for the victim. Barnes v. State, 88 Ala. 204, 7 So. 38 (1890); Pope v. State, 10 Ala. App. 91, 64 So. 526 (1914)."
Weatherford v. State, 369 So.2d 863, 870 (Ala.Crim.App. 1979). See Harrison v. State, 235 Ala. 1, 178 So. 458 (1937).
In the instant case, the evidence of the prior rape of the victim by the appellant by forcible compulsion certainly tends to prove the appellant's sexual passion for his daughter.
In addition, we note that the appellant's assertion that he was denied the right to cross-examine the victim by virtue of § 12-21-203, Code of Alabama 1975 is unfounded. This section, known as the "rape shield" statute, clearly provides for the admission *Page 643 
by the defense of evidence of the victim's past sexual behavior in certain circumstances when it involves the participation of the accused. Section 12-21-203(c), Code of Alabama 1975;Smiley v. State, 435 So.2d 202 (Ala.Crim.App. 1983).
Furthermore, we note that this issue was not properly preserved for our consideration since no objection and/or adverse ruling on this point appears in the record. Following the victim's testimony on rebuttal, the court inquired as to whether the appellant wished to cross-examine the victim on this point. The appellant's attorney responded, "No questions, Your Honor." (R. 282).
In light of the position taken by the appellant at trial, i.e., that no sexual contact had ever occurred between himself and the victim, his counsel's decision in this regard is not surprising. It was merely a matter of trial strategy.
For the reasons stated above, we hold that the trial court committed no error in admitting the victim's testimony concerning this prior incident. Hogue v. State, 54 Ala. App. 682, 312 So.2d 86 (1975). See also, Smith v. State,409 So.2d 455 (Ala.Crim.App. 1981).
 IV
The appellant contends that the trial court committed reversible error in denying his motion for mistrial based on a juror's discussion of the case with her husband and her alleged failure to fully answer questions during voir dire.
After the jury was impaneled in this cause, there was a noon recess. When the jury returned from lunch, one of the jurors made it known she "had a statement she would like to make." (R. 7). While the judge and both parties' counsel were present in the judge's chambers, the juror inquired as to a question asked by defense counsel during voir dire.
The court then restated the question as follows: "THE COURT: Do you have any fixed opinions against a person who would use alcoholic beverages?" (R. 9) The juror responded, "Needless to say, I was scared to death. But, the more I thought about it, I do have. I feel like that drinking is wrong. So you know, I wanted to bring that out." (R. 9)
Following this exchange, the prosecutor repeatedly inquired of the juror whether or not she would still be able to listen to the evidence as a whole and render a fair and impartial verdict based thereon and not solely upon the fact that the appellant drank alcohol. (R 10-12) The juror replied, "I feel like I can. But, I just felt like I had to hear that question and let you know how I felt about it, and how I stand." (R. 11)
The juror was then asked if she had talked to anyone during the noon recess. She stated that she had telephoned her husband at work, and the following exchange occurred:
 "MS. TRUITT: I called my husband, to tell him that I was selected for a case, and what type of case. And, he knew how I felt about it. And, he said, "Do you reckon you ought to let them know how you feel?"
 "And, of course, I didn't even mention to him about the alcoholic question, because that was just in the back of my mind and I felt like I needed to get that cleared up. But, I have talked to him on the telephone.
 "MR. DONALDSON: And, you were talking to him about what type of case this was?
 "MS. TRUITT: Yes, just over the phone. I didn't tell him anything, just the type case it was. And, he was at work, and I told him I had been selected for a case.
 "MR. DONALDSON: When you got back, did you talk with a clerk down in the office?
 "MS. TRUITT: Yes, and asked her who I needed to speak to, whether one of y'all or the Judge.
"MR. DONALDSON: Did you speak with anyone else?
"MS. TRUITT: No.
 "MR. DONALDSON: Did you speak with any of the other jurors?
 "MS. TRUITT: I didn't — one lady. I just said that I wanted to talk to y'all, and *Page 644 
that was all. I didn't tell her what, or anything, that I just needed to talk to you."
(R. 12-14)
We are not persuaded that the appellant's rights were prejudiced by the juror's conduct in this case. Accordingly, we find no abuse of discretion on the part of the trial judge in denying the appellant's mistrial motion. See Parish v. State,480 So.2d 29 (Ala.Crim.App. 1985).
With respect to the juror's statement concerning her views on drinking, her failure to reveal this opinion during voir dire does not appear to have been willful. Her responses to the court's inquiries indicate that she had not really understood the question on voir dire and, later, after further thought, felt like she had a duty to inform the court of her beliefs.
Furthermore, it is clear from the record that this juror felt like she could still render a fair and impartial verdict. In addition, the trial court was in a better position to evaluate the juror's responses and determine the probable prejudice.Parish, supra.
With respect to the juror's conduct in contacting her husband concerning the case, it is clear that she only told him that she had been selected as a juror and that the case was a rape and sodomy case. She did not "discuss" the evidence in the case and, indeed, could not have, since none had been presented at that time. Parish, supra; See Phillips v. State, 447 So.2d 1312
(Ala.Crim.App. 1984).
 V
The appellant contends that the trial court erred to reversal in commenting on the evidence in the supplemental oral charge. We disagree.
The appellant contends that the following statement made by the judge was an impermissible comment on the evidence:
 "It is more difficult to make up your mind and to decide whether or not circumstances and all of the surroundings and the relationship of the parties are such that there is an implied threat."
(R. 346)
This statement was made near the end of the fairly lengthy supplemental instructions as to the elements of the offenses and the definition of forcible compulsion. (Supp. R. 342-347) The following then occurred:
 "MR. DONALDSON: My exception would be that I did not want the jury to have the impression the only thing they had to decide was implied threat because obviously they have to decide first whether or not there was intercourse and penetration and the elements of sodomy before they get to any threat. I think that when the Court was reading the definition of forcible compulsion — I am not sure if they understood any implied threat must be of physical harm and not implied, to overcome whether or not there was any resistance and therefore alleviating her consent. We have the elements of the offense first and then come to forcible compulsion. I just wanted to make that clear.
 "THE COURT: I will give them some further charges on the elements of the offense.
"MR. SUMMERFORD: That will be fine."
(R. 347-348, corrected supplemental record p. 349)
As there was no adverse ruling from which the appellant appeals, this issue has not been properly preserved for our review. Gross v. State, 395 So.2d 485 (Ala.Crim.App. 1981).Allen v. State, 414 So.2d 989 (Ala.Crim.App. 1981), affirmedAllen v. State, 414 So.2d 993 (Ala. 1982).
Nevertheless, we have considered the appellant's contention in this regard, and find it to be without merit. In the first place, we are not convinced that the judge's comment here constituted a comment on the weight of the evidence and invaded the province of the jury. Cf. Jones v. State, 488 So.2d 48
(Ala.Crim.App. 1986); Dixon v. State, 448 So.2d 457
(Ala.Crim.App. 1984); Pease v. City of Montgomery, 333 So.2d 221
(Ala.Crim.App. 1976); Pryor v. State, *Page 645 48 Ala. App. 465, 265 So.2d 907 (Ala.Crim.App. 1972); Gray v.State, 44 Ala. App. 12, 200 So.2d 514 (1967); Neal v. State,36 Ala. App. 156, 54 So.2d 613 (1951).
This statement did not bolster any witnesses' testimony or imply the appellant was guilty. It merely referred to the legal definition of forcible compulsion and the difference between express and implied threats of force.
Even had this comment been an impermissible comment on the evidence, any possible prejudice was cured by the trial court's further supplemental instructions. The trial court made it quite clear to the jury that they were not to consider the forcible compulsion issue unless they first were convinced from the evidence beyond a reasonable doubt that the rape and/or sodomy charged in the indictment had taken place. The court's oral charge must be construed as a whole. See Primm v. State,473 So.2d 1149 (Ala.Crim.App. 1985); Bragg v. State,453 So.2d 756 (Ala.Crim.App. 1984).
 VI
The appellant contends that the trial court erred to reversal in denying his motion for new trial based on the prosecutor commenting on matters not in evidence in his closing arguments. The comment to which the appellant objects is as follows:
 "But, yet, at that point was when an event, that we simply contend was one of the many events that changed her life, happened."
(R. 286)
 "This court will only be persuaded to a reversal on such an allegation where the prosecutor's comments go to prejudicial matters not in evidence
which either cannot be eradicated from the minds of the jurors, or being eradicable, where the trial judge overrules objection thereto or fails to properly instruct the jury. Allred v. State, 291 Ala. 34, 277 So.2d 339 (1973). Comments, even though hard hitting, which may arise from reasonable inferences from the evidence are permissible."
Johnson v. State, 335 So.2d 663 (Ala.Crim.App. 1976).
We are not convinced, as the appellant suggests, that this comment could only imply that there were many incidents involving prior sexual contact between the victim and the defendant. The State presented other evidence during the trial which may have been the subject of the attorney's reference. We note that the record does not reveal the context in which this statement was made. Therefore, "we are not at liberty to accept appellant's statement as to the reference other than as argument only." Graffeo v. State, 412 So.2d 312, 322
(Ala.Crim.App. 1982).
Furthermore, even had this statement concerned "prejudicial matters not in evidence", the trial judge's prompt curative instruction sufficed to remove any possibility of prejudice. (R. 286-287). Johnson, supra; Graffeo, supra. The trial judge, therefore, committed no reversible error in denying the appellant's motion for new trial based on this comment.Retowsky v. State, 333 So.2d 193 (Ala.Crim.App. 1976). For the above-stated reasons, this cause is due to be and is, hereby, affirmed.
MOTION GRANTED IN PART; OPINION CORRECTED; APPLICATION OVERRULED.
All the Judges concur.